UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| Vincent J. Bifolck, Individually and as Executor of the Estate of Jeanette D. Bifolck,<br>         Plaintiff,<br><br>         v.<br><br>Philip Morris, Inc.,<br>         Defendant. | CIVIL ACTION NO.<br>3:06cv1768 (SRU) |

ORDER CERTIFYING QUESTIONS TO THE
CONNECTICUT SUPREME COURT

This is a diversity action asserting Connecticut state law claims pursuant to the Connecticut Product Liability Act ("CPLA"), Conn. Gen. Stat. § 52-572m *et seq*. The plaintiff, Vincent J. Bifolck, individually and as Executor of the Estate of his deceased wife, Jeanette D. Bifolck, brings CPLA claims for wrongful death and loss of consortium, alleging that the Marlboro and Marlboro Lights cigarettes produced and sold by defendant Philip Morris and smoked by his late wife were defectively designed and manufactured. He seeks compensatory damages and statutory punitive damages, pursuant to section 54-240b of the CPLA.

Bifolck initiated this lawsuit in 2006; five and a half years after Jeanette Bifolck succumbed to lung cancer at the age of 42. Jeanette Bifolck smoked Marlboro or Marlboro Lights (collectively, the "cigarettes") for nearly thirty years. Bifolck alleges that toxic ingredients in the cigarettes were responsible for his wife's lung cancer and ultimate death. Bifolck's CPLA claims are grounded in strict liability, for defective design of the cigarettes, and negligence, for negligent design and manufacture of the cigarettes.

With respect to strict liability, Bifolck asserts that the cigarettes were defective and

unreasonably dangerous in that they (1) contained added ingredients (including carcinogenic additives) that altered the natural form of the tobacco in the cigarettes, and (2) utilized manufacturing processes affecting the composition of the tobacco in the cigarettes, the amount, form, and potency of the nicotine in the tobacco, and the manner in which cigarette smoke was transmitted to the smokers. Bifolck contends that these design and manufacturing processes rendered the cigarettes unnecessarily addictive and unnecessarily carcinogenic. *See* Proposed Am. Compl. ¶¶ 19-32 (doc. # 167-1).[1]

With respect to negligence, Bifolck contends that Philip Morris failed to comply with the standards of care applicable to the design and manufacture of cigarette products by a prudent cigarette manufacturer by: (1) designing the cigarettes knowing of their addictive and toxic, cancer-causing properties; (2) knowingly designing and manufacturing the cigarettes in a way that enhanced their addictive and cancer-causing nature; (3) failing and refusing to implement changes to the design of the cigarettes that would have reduced their addictive nature; and (4) failing and refusing to implement changes in the design of the cigarettes that would have reduced the levels of toxic and cancer-causing ingredients in them. *Id.* ¶¶ 33-47.

In a case involving similar claims that was also on my docket, *Izzarelli v. R.J. Reynolds Tobacco Co.*, No. 3:99-cv-02338-SRU, the Second Circuit Court of Appeals recently certified the question whether Comment i to section 402A of the Restatement (Second) of Torts precludes a strict products liability suit against a cigarette manufacturer where there is evidence that the defendant purposefully manufactured cigarettes to increase daily consumption without regard to the resultant increase in exposure to carcinogens, but no evidence of adulteration or

---

[1] I granted Bifolck's Motion to Amend/Correct (doc. #167) on December 27, 2013. Doc. # 176. Although an amended complaint has not yet been filed, I treat the Proposed Amended Complaint (doc. # 167-1) rather than the original Complaint (doc. #1) as the operative pleading in this suit.

contamination. *Izzarelli v. R.J. Reynolds Tobacco Co.*, 731 F.3d 164, 169 (2d Cir. 2013). The resolution of that issue will likely determine whether Bifolck's strict liability claims are viable in this case.

Philip Morris has repeatedly asserted that under Connecticut law, section 402A and Comment i apply to CPLA claims grounded in negligence as well. *See* Def.'s Mem. Supp. Summ. J. 23 (doc. # 87); Def.'s Opp. Cert. 5-7 (doc. # 173). Bifolck disputes that contention, and argues that a product need not be "unreasonably dangerous" in a claim for negligent design. Until now, it has been unnecessary to confront this issue directly, because on summary judgment I ruled that there were genuine issues of material fact for trial under both theories, based on my interpretation of Comment i. That interpretation, however, is currently before the Connecticut Supreme Court in the *Izzarelli* case. And if, as Philip Morris asserts, section 402A and Comment i apply to a CPLA claim grounded in negligence, the results of the certification proceedings may call into doubt the viability of Bifolck's negligence claims as well.

In light of Philip Morris' position and the certification proceedings in *Izzarelli*, Bifolck moves to certify two questions addressing the standard for determining whether a product is "defective" in a CPLA claim for negligence – specifically: (1) whether a plaintiff asserting a CPLA claim grounded in negligence must identify a defect that renders a product "unreasonably dangerous," as provided in section 402A of the Restatement (Second) of Torts and Comment i to that provision; and (2) if the answer is in the affirmative, whether Comment i precludes a CPLA claim against a cigarette manufacturer for negligent design of a cigarette absent proof of adulteration or contamination of the tobacco in the cigarette. Bifolck also seeks certification of a third question: whether the CPLA subsumes or abrogates the Connecticut common-law rule for calculating punitive damages. Although not central at the liability stage, the punitive damages

issue arose in *Izzarelli*, and was an unsettled question of Connecticut law.

Philip Morris objects to certification of these questions, arguing that the relevant issues are now settled and that certification would be inappropriate, because the Second Circuit declined to certify the punitive damages question in *Izzarelli* or to amend its certification order to encompass CPLA claims grounded in negligence.

**I.      Discussion**

Under Connecticut law, "[t]he Supreme Court may answer a question of law certified to it by a court of the United States . . . if the answer may be determinative of an issue in pending litigation in the certifying court and if there is no controlling appellate decision, constitutional provision or statute of this state." Conn. Gen. Stat. § 51-199b(d). When deciding whether to certify a question to the Connecticut Supreme Court, a court should consider, among other factors: "(1) the absence of authoritative state court decisions; (2) the importance of the issue to the state; and (3) the capacity of certification to resolve the litigation." *O'Mara v. Town of Wappinger*, 485 F.3d 693, 698 (2d Cir. 2007). "Where a question of statutory interpretation implicates the weighing of policy concerns, principles of comity and federalism strongly support certification." *Parrot v. Guardian Life Ins. Co. of Am.*, 338 F.3d 140, 144 (2d Cir. 2003).

      A.   Whether Section 402A and Comment i Apply in a CPLA Negligence Claim

The CPLA was intended to merge the various common law theories of products liability into a single cause of action in order to simplify pleadings and procedures. *See Lynn v. Haybuster Mfg., Inc.*, 226 Conn. 282, 292 (1993). Claims under the CPLA are "in lieu of all other claims against product sellers, including actions of negligence, strict liability and warranty, for harm caused by a product." Conn. Gen. Stat. § 52-572n(a). "With the consolidation of all

product liability claims into a single form of action, the CPLA became the 'exclusive remedy for claims falling within its scope.'" *LaMontagne v. E.I. du Pont de Nemours & Co., Inc.*, 41 F.3d 846, 855-56 (2d Cir. 1994) (quoting *Winslow v. Lewis-Shepard, Inc.*, 212 Conn. 462, 471 (1989)). Therefore, a plaintiff may not assert a cause of action against a product seller for harm caused by the product except within the framework of the CPLA. *See, e.g.*, *Daily v. New Britain Machine Co.*, 200 Conn. 562, 571-72 (1986). A plaintiff, however, retains the right "to allege the traditional theories of recovery," as long as he does so "under one unified count denominated as a 'product liability claim.'" *Lamontagne v. E.I. du Pont de Nemours & Co., Inc.*, 834 F. Supp. 576, 587 (D. Conn. 1993) (internal citations omitted), *aff'd*, 41 F.3d 846 (2d Cir. 1994); *see also Lynn*, 226 Conn. at 288-90 (noting that the Connecticut Legislature intended "to eliminate the complex pleading provided at common law" rather than "creat[e] a wholly new right" or eliminate common-law substantive rights).

The CPLA does not lay out the elements of claims under the various theories it consolidates. The Connecticut Supreme Court has adopted the "consumer expectations" test set forth in section 402A and Comment i for CPLA claims grounded in strict liability. *See, e.g.*, *Wagner v. Clark Equip. Co.*, 243 Conn. 168, 189-90 (1997); *Potter v. Chicago Pneumatic Tool Co.*, 241 Conn. 199, 208-12 (1997). In order to recover under the doctrine of strict liability, a plaintiff must prove: (1) the defendant was engaged in the business of selling the product; (2) the product was in a defective condition unreasonably dangerous to the consumer or user; (3) the defect caused the injury for which compensation was sought; (4) the defect existed at the time of the sale; and (5) the product was expected to and did reach the consumer without substantial change in condition. *Giglio v. Connecticut Light & Power Co.*, 180 Conn. 230, 234 (1980) (citing Restatement (Second) of Torts § 402A (1965), and *Rossignol v. Danbury School of*

*Aeronautics, Inc.*, 154 Conn. 549, 562 (1967)).  As defined in Comment i, a product typically is "unreasonably dangerous" if it is "dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics." § 402A cmt. i.[2]

CPLA claims grounded in negligence, by contrast, are analyzed under Connecticut common-law negligence principles, which require the existence of a duty to the consumer, a breach of that duty, causation and damages.  *See, e.g.*, *LaMontagne*, 41 F.3d at 855-56; *Coburn v. Lenox Homes, Inc.*, 186 Conn. 370, 375 (1982).  The questions presented by Bifolck relate to the appropriate standard of care.  Both parties acknowledge that the CPLA requires a plaintiff to prove that the product in question is "defective," regardless of whether his claim is grounded in strict liability or negligence.  *See, e.g.*, *Faux v. Thomas Indus., Inc.*, No. CV89-0233934S, 1992 WL 293230 (Conn. Super. Ct. Oct. 8, 1992) ("[D]efectiveness is an essential element of a product liability action based on negligence as well as one based on strict tort liability.").  But, they dispute whether a negligently designed product must also be "unreasonably dangerous" as provided in section 402A and defined in Comment i.

Whether section 402A and Comment i apply in a negligence action is critical, because Comment i provides that "[g]ood tobacco is not unreasonably dangerous merely because the effects of smoking may be harmful; but tobacco containing something like marijuana may be unreasonably dangerous."  The question certified in *Izzarelli* asks whether those statements preclude a strict liability claim against a cigarette manufacturer that purposefully manufactured

---

[2] In *Potter*, the Connecticut Supreme Court affirmed its adherence to section 402A's "consumer expectations" test, but adopted a modified version of the test for particularly complex products, whereby a jury must "consider the product's risks and utility and then inquire whether a reasonable consumer would consider the product unreasonably dangerous."  241 Conn. at 220-21.  Either way, though, a product must be "unreasonably dangerous" before a product seller can be held strictly liable for a product that causes harm.  *Id.*

cigarettes to increase daily consumption in the absence of contamination or adulteration of the tobacco. If the Connecticut Supreme Court answers that question in the affirmative, then the viability of Bifolck's negligent design claim will be in jeopardy unless section 402A's "unreasonably dangerous" requirement does not apply.

Bifolck asserts that section 402A was not meant to apply in a negligence action, because section 402A is a rule "of *strict liability*, making the seller subject to liability to the user or consumer *even though he has exercised all possible care in the preparation and sale of the product*." § 402A cmt. a (emphasis added). Moreover, Comment a makes clear that section 402A "does not preclude liability based upon the alternative ground of negligence of the seller, where such negligence can be proved." *Id.* Bifolck contends that section 402A's requirement that a product must be "unreasonably dangerous" is a ratcheted up standard intended to temper the exposure of product sellers in cases where the plaintiff is relieved of the obligation to prove fault. In essence, the "unreasonably dangerous" standard was included to prevent "strict liability" from becoming "absolute liability" for product sellers whose products cause injury to consumers. Although a product must be "defective" in both strict liability and negligence cases, in a negligence action a product may be defective without being unreasonably dangerous. *See* Pl.'s Mem. Supp. Cert. 7-11 (doc. # 170).

Bifolck recognizes that the Connecticut appellate courts have not expressly adopted this position. Instead, he argues that the issue is unsettled and, in light of *Lynn*, "there is unquestionably a significant issue as to whether the requirements of § 402A were intended to be added to the preexisting elements of a cause of action in Connecticut for negligent product design or manufacture." *Id.* at 11. Philip Morris disagrees, asserting that the Connecticut Supreme Court's decision in *Wagner* and several lower court cases make it clear that, whether

- 7 -

grounded in strict liability or negligence, a CPLA claim must involve a defective product that is "unreasonably dangerous," pursuant to section 402A.  Def.'s Opp. Cert. 6 (citing *Wagner*, 243 Conn. 168; *White v. Mazda Motor of Am. Inc.*, 139 Conn. App. 39 (2012), *cert. granted on other grounds*, 307 Conn. 949 (2013); *Bergeron v. Pacific Food, Inc.*, No. CV075001992S, 2011 WL1017872, at *3 (Conn. Super. Ct. Feb. 14, 2011); *Martone v. C. Raimondo & Sons Constr.*, No. CV00070497S, 2002 WL 31234758, at *2 (Conn. Super. Ct. Aug. 28, 2002); *Faux*, 1992 WL 293230, at *3).

Only two of the cases cited by Philip Morris can be read to take an affirmative stance on this issue, and both were decided at the Superior Court level.  *See Bergeron*, 2011 WL1017872, at *3 ("Since the CPLA was not meant to eliminate common-law substantive rights courts should assess the plaintiff's theories of recovery in light of the Connecticut common-law requirements. . . . Nevertheless, in any products liability action, the plaintiff must plead and prove that the product was defective. . . . A product is defective when it is unreasonably dangerous to the consumer or user." (internal citations and quotation marks omitted)); *Faux*, 1992 WL 293230, at *3 (finding verdict inconsistent where jury found defendant not liable on strict liability claim, because product was not "unreasonably dangerous and defective," but liable on negligent design claim).  Raimondo does not appear to have involved a CPLA negligence claim at all; the plaintiff brought a claim against a general contractor for negligent maintenance of a job site and a *separate* CPLA strict liability claim against the product seller for design defect.  2002 WL 31234758, at * 1.  The discussion of section 402A applied only to the strict liability claim and related only to whether expert testimony was necessary to prove that the product was "unreasonably dangerous."  *Id.* at *2.  Similarly, although *Mazda* involved both CPLA strict liability and negligence claims, its discussion of 402A singled out strict liability and

- 8 -

related to the necessity of expert testimony to establish that a product was "unreasonably dangerous." 139 Conn. App. at 48-50.

In *Wagner*, the Connecticut Supreme Court considered, among other things, whether the jury should have been instructed on a forklift's compliance with an OSHA regulation in a CPLA action. 243 Conn. at 186-91. The OSHA regulation had been admitted into evidence on the plaintiff's theories of strict liability and negligence, and the Court held that the trial court should have instructed the jury that it could consider the evidence of compliance "in determining whether the forklift was defectively designed and whether the defendants acted with due care in their design and distribution of the forklift." *Id.* at 186-87.

In the course of its discussion of the jury-instruction issue, the Court stated that section 402A provides the standard for determining whether a product is defectively designed. *Id.* at 189. It is not clear, however, whether the Court was addressing the negligence claim in that part of its analysis, or whether it was simply explaining the probative value of an OSHA regulation in a strict liability claim. *See id.* (Stating that section 402A provides "the standard to be used in *a product liability action* for determining whether a product is defectively designed" but also noting that section 402A's "'consumer expectation' standard is now well established in Connecticut *strict products liability decisions*." (emphasis added)).

The *Wagner* Court was not focused on the differences, if any, between the standards for strict liability and negligence in a CPLA action, because "[t]he jury was not asked, and did not indicate, whether its verdict was based on negligence, strict liability, or both" and, for the most part the parties "likewise [did] not differentiate[] their arguments between the two theories." *Id.* at 176 n.8. The plaintiff had alleged that the forklift was "unreasonably dangerous because it lacked a standardized warning system sufficient to gain the attention of drivers and pedestrians

when used in an industrial setting," and "[t]his alleged design defect was the basis for the plaintiff's negligence and strict liability claims." *Id.* at 190. Clearly, it is possible for a negligently designed product to be defective *because* it is unreasonably dangerous, but that does not resolve whether it *must* be unreasonably dangerous to be defective. The *Wagner* Court saw no need to inquire into issues with which it was not presented. *Id.* In this case, however, whether section 402A's "unreasonably dangerous" requirement applies in a CPLA claim of negligent design is squarely before me, the resolution of that question is critical to the outcome of the case, and no authoritative Connecticut precedent provides an answer.

Philip Morris argues in the alternative that, even if the law is not settled, I should not certify this question because the Second Circuit declined to amend its certification order in *Izzarelli* to encompass the applicability of section 402A to a negligence claim. The Second Circuit, however, provided no indication why it declined to certify this issue. I am presented in this case with what I view to be unsettled question of Connecticut law, which is substantially related to an issue currently pending before the Connecticut Supreme Court. I believe that it is in the interests of judicial economy to have both questions decided together, because clarification of these issues will impact future tobacco litigation in this state, as well as product liability actions more broadly. Therefore, I grant certification of Bifolck's first question; whether section 402A's requirement that a product be "unreasonably dangerous" and Comment i's definition of that term apply in a CPLA claim grounded in negligence.

There is no need to certify Bifolck's second question, however, because the Connecticut Supreme Court will determine the correct interpretation of Comment i itself in *Izzarelli*. If the Court determines that section 402A and Comment i apply to both strict liability and negligence claims under the CPLA, then the Court's interpretation of Comment i in *Izzarelli* will provide

sufficient guidance to resolve the issue here. If section 402A and Comment i do not apply in a negligence case, then the plaintiff's proposed question is moot.

### B. Whether Connecticut's Common-Law Punitive Damages Rule Applies

The punitive damages provision of the CPLA limits such damages to "an amount equal to twice the damages awarded to the plaintiff," Conn. Gen. Stat. § 52-240b, but the statute does not indicate how a judge should calculate those damages. Prior to the enactment of the CPLA, punitive damages in product liability actions were calculated under the common-law rule, which limits punitive damages to the expenses of litigation less taxable costs. *Waterbury Petroleum Products, Inc. v. Canaan Oil & Fuel Co.*, 193 Conn. 208, 235-38 (1984); *Hanna v. Sweeney*, 78 Conn. 492 (1906). Generally, where a statute authorizing punitive damages is silent about how they should be calculated, a court should follow the common-law rule. *See Arnone v. Enfield*, 79 Conn. App. 501, 521-22 (Conn. App. 2003). In *Izzarelli*, however, the plaintiff argued that differences between the common law and statutory product liability causes of action indicated that the CPLA abrogated the common-law formulation of punitive damages. *See Izzarelli*, 767 F. Supp. 2d at 327.

The language of the CPLA and its legislative history provide no indication whether the CPLA's punitive damages provision incorporates or abrogates the traditional common-law formulation. *Id.* At the time I took up the issue in *Izzarelli*, no Connecticut appellate court had ever been called upon to answer this question and two Connecticut Superior Court decisions had reached conflicting conclusions. *Id.* (comparing *Roome v. Shop–Rite Supermarkets, Inc.*, No. 020281250, 2006 WL 2556572 (Conn. Super. Aug. 16, 2006), with *Russo v. Conair Corp.*, No. 030483600, 2004 WL 1730136 (Conn. Super. June 30, 2004)). Because there was no binding

authority from the Connecticut appellate courts, I predicted what the Connecticut Supreme Court would decide if presented with the question.  *Id.*  Ordinarily, I would have sought to have the Connecticut Supreme Court resolve the issue by seeking certification, but I was concerned about further delay in a lawsuit that had been pending for over a decade.  *Id.* at 333 n.10.  (citing *Bensmiller v. E.I. du Pont de Nemours & Co.*, 47 F.3d 79, 82 (2d Cir. 1995).

In predicting the outcome, I took guidance from the Connecticut Supreme Court's decision in *Lynn*, which emphasized: "[i]n determining whether or not a statute abrogates or modifies a common law rule the construction must be strict."  226 Conn. at 289-90 (quoting *Willoughby v. New Haven*, 123 Conn. 446 (1937)).  *Lynn* held that the CPLA did not bar claims for loss of consortium, because the plain language of the statute did not prohibit such claims and the legislature had not unambiguously expressed the intent to do so.  Applying the same principles of strict construction, I concluded that the CPLA's punitive damages provision also subsumed rather than abrogated the common law.  *Izzarelli*, 767 F. Supp. 2d at 328.

If Bifolck prevails on one or more of his claims, and if the jury finds that he is entitled to punitive damages, I will be required to determine the amount of punitive damages to award.  In calculating those damages, I will once again be faced with the question whether the CPLA incorporates or abrogates Connecticut's common law rule of punitive damages.  As with the negligence issue, Philip Morris objects to Bifolck's motion for certification of the punitive damages question on the grounds that the issue is settled and that the Second Circuit declined to certify it in *Izzarelli*.  The Second Circuit, however, expressly did not address the punitive damages question, because it had certified the threshold legal issue in that case.  *Izzarelli*, 731 F.3d at 167 n.2.  And the issue is not settled.  Although two judges have adopted my approach to calculating punitive damages under the CPLA, *see Fraser v. Wyeth, Inc.*, No. 3:04CV1373 JBA,

2013 WL 4012764, at *2-3 (D. Conn. Aug. 5, 2013), and *R.I. Pools, Inc. v. Paramount Concrete, Inc.*, No. X05FSTCV095011707S, 2011 WL 6934779, at *8-9 (Conn. Super. Ct. Dec. 5, 2011), no Connecticut appellate court has directly addressed whether the CPLA's punitive damages provision subsumes or abrogates the common-law rule.

Product liability actions are common; therefore, the correct interpretation of the CPLA's punitive damages provision is likely to recur in future cases. Moreover, the issue is important to the State of Connecticut, because it involves balancing competing policy concerns – i.e., guaranteeing that a plaintiff is made whole while also ensuring that product manufacturers are not unfairly punished, which could negatively impact business in Connecticut. *See Waterbury Petroleum*, 193 Conn. at 237-38; *Parrot*, 338 F.3d at 144. Thus, after considering each of the *O'Mara* factors, I believe that this question is appropriate for certification to the Connecticut Supreme Court as well. Given that this action already has been put on hold pending resolution of the relevant issues in *Izzarelli* and given that I am granting certification of the threshold legal issue in this case, it seems wise to certify the punitive damages question now, rather than litigate the issue again down the road.

## II.     Questions for Certification

Because "the answer[s] may be determinative of an issue in pending litigation" in this court and because "there [exists] no controlling appellate decision, constitutional provision or statute" of Connecticut, *see* Conn. Gen. Stat. § 51-199b(d), the following questions are certified to the Supreme Court of Connecticut:

> 1. Does section 402A of the Restatement (Second) of Torts (and Comment i to that provision) apply to a product liability claim for negligence under the CPLA?
>
> 2. Does Connecticut's common law rule of punitive damages, as articulated in *Waterbury Petroleum Products, Inc. v. Canaan Oil & Fuel Co.*, 193 Conn. 208 (1984),

apply to an award of statutory punitive damages pursuant to Conn. Gen. Stat. § 52-240b, the punitive damages provision of the CPLA?

The Connecticut Supreme Court may, of course, reformulate these questions as it sees fit.

Additionally, this court will make available to the Connecticut Supreme Court any part of the record in this case that will assist that Court in its review of the issue.

### III.    Counsel of Record

For Plaintiff:

David S. Golub
Silver, Golub & Teitell
184 Atlantic St., Po Box 389
Stamford, CT 06904
203-325-4491
Fax: 203-325-3769
Email: dgolub@sgtlaw.com

For Defendants:

John B. Daukus
Francis H. Morrison, III
Axinn, Veltrop & Harkrider LLP-HTFD
90 State House Square
9th Floor
Hartford, CT 06103-3702
860-275-8190
Fax: 860-275-8101
Email: dvz@avhlaw.com

Issued at Bridgeport, Connecticut, this 14th day of February 2014.

/s/ Stefan R. Underhill
Stefan R. Underhill
United States District Judge