UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| VINCENT J. BIFOLCK, AS EXECUTOR OF THE ESTATE OF JEANETTE D. BIFOLCK AND INDIVIDUALLY<br><br>V.<br><br>PHILIP MORRIS, INC. | :<br>:<br>:<br>:  No. 3:06cv1768 (SRU)<br>:<br>:<br>:<br>:<br>:  FEBRUARY 2, 2017 |

## SECOND AMENDED COMPLAINT

### I.   INTRODUCTION

Plaintiff Vincent J. Bifolck brings this action, in his capacity as the Executor of the Estate of his late wife, Jeanette D. Bifolck, and individually, against defendant Philip Morris, Inc., pursuant to the Connecticut Product Liability Act, Conn. Gen. Stats. § 52-572m, *et seq.*, to recover monetary damages for Jeanette D. Bifolck's wrongful death caused by smoking defendant's cigarettes.

### II.   JURISDICTION

1. Jurisdiction is conferred on this Court by 28 U.S.C. § 1332(a)(l) in that the plaintiff and the defendant are citizens of different states and the amount in controversy exceeds $75,000.00, exclusive of interest and costs. Venue is proper in this District pursuant to 28 U.S.C. § 1391(a).

## III.  PARTIES

2. Plaintiff Vincent J. Bifolck is the widower of Jeanette D. Bifolck and the Executor of her Estate. Plaintiff brings this action in his capacity as Executor of the Estate of Jeanette D. Bifolck and individually. Plaintiff is a resident of Vernon, Connecticut.

3. Defendant Philip Morris Inc. ("Philip Morris") is a Virginia corporation with its principal place of business in Virginia. At all times mentioned herein, defendant Philip Morris manufactured, distributed and marketed cigarette tobacco products, including cigarettes under the brand names of Marlboro and Marlboro Light, for sale to the public in Connecticut and throughout the United States.

## IV.  CLAIMS FOR RELIEF

### A. FIRST CLAIM FOR RELIEF

1.- 3. Paragraphs 1 through 3 of this Second Amended Complaint are incorporated herein as paragraphs 1 through 3 of the First Claim for Relief.

4. At all times mentioned herein, defendant Philip Morris designed, manufactured, marketed, distributed and promoted the sale of cigarette tobacco products, including cigarettes under the brand name of Marlboro and Marlboro Light, for sale to the public in Connecticut and throughout the United States.

5. In the early 1970's, and for a substantial period to time prior thereto and thereafter, defendant Philip Morris intentionally marketed and promoted the sale of its Marlboro cigarettes to minors, including minors residing in the State of Connecticut, all the while falsely denying that it was marketing and promoting the sale of its cigarettes to minors.

2

6. In the early 1970's, while she was still a minor, Jeanette D. Bifolck began smoking defendant's Marlboro cigarettes.

7. Jeanette D. Bifolck became addicted to the nicotine in defendant's Marlboro cigarettes and continued to smoke them for decades, switching in approximately 1997 to defendant's Marlboro Light cigarettes.

8. Jeanette D. Bifolck developed non-small cell (primary) lung cancer.

9. Jeanette D. Bifolck's lung cancer was caused by the toxic ingredients in the Marlboro and Marlboro Light cigarettes she smoked.

10. Jeanette D. Bifolck incurred medical expenses for care and treatment of her lung cancer (and its complications), including radiation treatment and chemotherapy.

11. Jeanette D. Bifolck died on March 9, 2000, at the age of 42, as a result of the lung cancer she developed from smoking defendant's cigarettes and the medical complications thereof, including extensive metastasis and respiratory failure.

12. As a result of her injuries, Jeanette D. Bifolck suffered severe emotional distress, anguish and anxiety, including fear of death.

13. As a result of her injuries, Jeanette D. Bifolck was deprived of the opportunity to carry on her normal life's activities and, as a result of her death, she was permanently deprived of such opportunity.

14. As a result of her injuries, Jeanette D. Bifolck's earning capacity was impaired and, as a result of her death, her earning capacity was permanently destroyed.

15. As a result of her injuries, Jeanette D. Bifolck suffered severe physical pain and disability.

16. As a result of her death, the Estate of Jeanette D. Bifolck incurred funeral expenses.

17. Defendant Philip Morris is liable to the Estate of Jeanette D. Bifolck pursuant to the Connecticut Product Liability Act, Conn. Gen. Stat. § 52-572n *et seq.*, including Conn. Gen. Stats. § 52-240b, for her injuries and death, as follows:

### (a) Negligent Design

18. At all times mentioned herein, defendant Philip Morris was and continues to date to be engaged in the business of manufacturing, distributing and marketing cigarette products, including the Marlboro and Marlboro Light cigarettes smoked by Jeanette D. Bifolck.

19. In the early 1970's and throughout the time that Jeanette D. Bifolck smoked defendant's Marlboro and Marlboro Light cigarettes, defendant was aware that the overwhelming majority of new consumers of its Marlboro and Marlboro Light cigarettes (*i.e.*, beginning smokers) were minors who had increased susceptibility to the addictive properties of nicotine and increased vulnerability to disease (including lung cancer) as a result of smoking defendant's Marlboro and Marlboro Light cigarettes.

20. In the early 1970's and for a substantial time prior thereto and thereafter, including throughout the time that Jeanette D. Bifolck smoked defendant's Marlboro and Marlboro Light cigarettes, defendant Philip Morris had the ability to design and manufacture Marlboro and Marlboro Light cigarettes with a reduced level and yield of nicotine and with a reduced level and yield of carcinogens, including with no (or virtually no) nicotine yield and with no (or virtually no) carcinogenic yield, that would render its cigarettes either non-addictive and/or non-carcinogenic.

21. In the early 1970's and for a substantial time prior thereto and thereafter, including throughout the time that Jeanette D. Bifolck smoked defendant's Marlboro and Marlboro Light cigarettes, defendant Philip Morris made (and to the present time continues to make) design decisions that rendered the Marlboro and Marlboro Light cigarettes smoked by Jeanette D. Bifolck unnecessarily addictive and unnecessarily carcinogenic.

22. Defendant Philip Morris designed, manufactured, distributed, marketed and promoted the sale of the Marlboro and Marlboro Light cigarettes smoked by Jeanette D. Bifolck knowing of the unnecessarily addictive and unnecessarily toxic, cancer-causing properties of its cigarettes, especially when smoked by minors, and of available processes to reduce or eliminate such properties.

23. Defendant Philip Morris purposefully designed and sold its cigarette products to deliver a pharmacologically effective dose of nicotine in order to create and sustain nicotine addiction in its consumer smokers, including Jeanette D. Bifolck.

24. In the early 1970's and for a substantial time prior thereto and thereafter, including throughout the time that Jeanette D. Bifolck smoked defendant's Marlboro and Marlboro Light cigarettes, defendant Philip Morris was aware that unless a cigarette delivered a certain amount of nicotine, new smokers would not become addicted and existing, "confirmed," smokers would be able to quit and, based on its knowledge of nicotine's pharmacological properties and addictive nature, incorporated physical and chemical design techniques into its cigarette products, including its Marlboro and Marlboro Light cigarettes, that would assure delivery of the precise levels of nicotine necessary to create and sustain addiction.

25. In the early 1970's and for a substantial time prior thereto and thereafter, including throughout the time that Jeanette D. Bifolck smoked defendant's Marlboro and Marlboro Light cigarettes, defendant Philip Morris was aware that the long-term commercial viability of its cigarette products depended on bringing in large numbers of replacement smokers to replace its smokers who die of smoking-related disease and that brand switching rates among committed addicted smokers are low and that the only way to sustain its sales would be by bringing in new smokers who have not yet become addicted or settled on a preferred brand. Defendant further knew that a substantial majority of people who become addicted smokers start smoking before the age of eighteen, and many more before the age of twenty-one.

26. In the early 1970's and for a substantial time prior thereto and thereafter, including throughout the time that Jeanette D. Bifolck smoked defendant's Marlboro and Marlboro Light cigarettes, defendant Philip Morris was aware that stimulating youth smoking initiation and retaining and increasing its share of the youth market was crucial to the success of its business, and for that reason intentionally created marketing campaigns designed to increase youth consumption, knowing and intending that underage smokers would be attracted by its marketing campaigns to start smoking.

27. Defendant Philip Morris failed and refused to implement changes in the design of the Marlboro and Marlboro Light cigarettes smoked by Jeanette D. Bifolck that would have reduced the addictive nature of the product and prevented the development of Jeanette D. Bifolck's lung cancer and her subsequent injuries and losses therefrom.

28. Defendant Philip Morris failed and refused to implement changes in the design of the Marlboro and Marlboro Light cigarettes smoked by Jeanette D. Bifolck that would have reduced the toxic and cancer-causing ingredients in the product and prevented the development of Jeanette D. Bifolck's lung cancer and her subsequent injuries and losses therefrom.

29. While falsely denying that it manipulated the nicotine in its Marlboro and Marlboro Light cigarettes, defendant Philip Morris designed and manufactured the Marlboro and Marlboro Light cigarettes smoked by Jeanette D. Bifolck to enhance the addictive nature of the cigarettes, especially to minors, though knowing that smokers such as Jeanette D. Bifolck would become addicted to Marlboro and Marlboro Light cigarettes and would increase their use and the likelihood of her developing lung cancer (and other disease) as a result of such use.

30. Defendant Philip Morris designed and manufactured the Marlboro and Marlboro Light cigarettes smoked by Jeanette D. Bifolck to increase the amount of tar and nicotine delivered to the smoker, knowing that smokers such as Jeanette D. Bifolck would, as a result, increase their use and the likelihood of her developing lung cancer (and other disease) as a result of such use.

31. In the 1990's, including throughout the time that Jeanette D. Bifolck smoked defendant's Marlboro Light cigarettes, and for a substantial time prior thereto and thereafter, defendant Philip Morris falsely represented that its Marlboro Light cigarettes delivered lower tar and lower yield to smokers, knowing that such representations were false.

32. Through its conduct as aforesaid, defendant Philip Morris failed to utilize the care required of a reasonably prudent cigarette manufacturer under the circumstances, and the Marlboro and Marlboro Light cigarettes smoked by Jeanette D. Bifolck were, as a result of defendant's conduct, defective and unreasonably dangerous.

33. The defective and unreasonably dangerous condition of the Marlboro and Marlboro Lights cigarettes smoked by Jeanette D. Bifolck existed at the time they were distributed and sold by defendant Philip Morris.

34. Defendant Philip Morris expected its cigarettes to reach their ultimate user without substantial change in the condition in which they were designed and manufactured, and they did so reach Jeanette D. Bifolck without substantial change in condition.

35. Jeanette D. Bifolck's injuries and death as aforesaid were caused as a result of defendant Philip Morris's negligence as aforesaid.

36. Defendant Philip Morris is liable to the Estate of Jeanette D. Bifolck for her injuries and death resulting from its negligence as aforesaid.

(b) <u>Statutory Punitive Damages</u>

37. The harm suffered by Jeanette D. Bifolck was the result of defendant Philip Morris' reckless disregard for the safety of its product users.

## B. SECOND CLAIM FOR RELIEF

1. - 37.  Paragraphs 1 - 37 of the First Claim for Relief are incorporated herein as paragraphs 1 - 37 of the Second Claim for Relief.

38.  Plaintiff Vincent J. Bifolck married Jeanette D. Bifolck in 1976 and remained married and living with her until her death in March 2000.

39.  As a result of defendant Philip Morris' negligent conduct as aforesaid, plaintiff Vincent J. Bifolck has suffered emotional distress from learning of his wife's illness and injuries, and will continue to suffer distress and anxiety in the future.

40.  As a further result of defendant Philip Morris' negligent conduct as aforesaid, plaintiff Vincent J. Bifolck has been deprived of the consortium and services of his wife, Jeanette D. Bifolck, and will continue to suffer such deprivation in the future.

41.  Defendant Philip Morris is liable to plaintiff Vincent J. Bifolck for his injuries as aforesaid.

42.  The harm suffered by plaintiff Vincent J. Bifolck was the result of defendant Philip Morris' reckless disregard for the safety of its product users.

V.     **PRAYER FOR RELIEF**

Wherefore, plaintiff prays the following relief:

1. Compensatory damages;

2. Punitive damages pursuant to Conn. Gen. Stats. § 52-240b;

3. Such other relief as the Court deems appropriate.

Dated at Stamford, Connecticut this 2nd day of February, 2017.

                                         PLAINTIFF VINCENT J. BIFOLCK, AS
                                         EXECUTOR OF THE ESTATE OF JEANETTE D.
                                         BIFOLCK AND INDIVIDUALLY


                                 BY:  /s/ David S. Golub
                                    DAVID S. GOLUB (ct00145)
                                    JONATHAN M. LEVINE (ct07584)
                                    SILVER GOLUB & TEITELL LLP
                                    184 ATLANTIC STREET
                                    STAMFORD, CT  06901
                                    Tel.  (203) 325-4491
                                    Fac.  (203) 325-3769
                                    Email: dgolub@sgtlaw.com
                                               jlevine@sgtlaw.com

## CERTIFICATION

I hereby certify that on February 2, 2017 a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

BY: /s/ David S. Golub
David S. Golub (ct 00145)
Silver Golub & Teitell LLP
184 Atlantic Street
Stamford, Ct 06901
Tel. (203) 325-4491
Fac: (203) 325-3769
Email: dgolub@sgtlaw.com