UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| VINCENT J. BIFOLCK,<br>      Plaintiff,<br><br>      v.<br><br>PHILIP MORRIS, INC.,<br>      Defendant. | No. 3:06-cv-1768 (SRU) |

### CONFERENCE MEMORANDUM AND ORDER

On August 10, 2017, I held a hearing on the pending motions in limine with David Golub and Jonathan Levine, counsel for the plaintiff, Vincent Bifolck; and Scott Kaiser, Frank Kelly, Fran Morrison, Geoffrey Michael, and John Tansky, counsel for the defendant, Philip Morris, Inc. ("PM"). This order represents a summary of the rulings I made on the record. Where pertinent, I have included clarifications of my oral rulings such that this order should be the controlling document regarding my resolution of those motions.

I did not address the following motions: Docs. # 282, 283, 285, 301, 304, and 305. Those motions will be addressed at the hearing on September 14, 2017. The following are the motions on which I heard argument.

<u>Doc. # 280 - Motion to Preclude Evidence of Preempted Theories of Liability</u>

PM moved to preclude evidence of what it deems "preempted theories of liability." The motion is based on the assumption that a plaintiff may not pursue a cause of action that, if successful, would effectively ban all cigarettes. After a discussion with the parties, I indicated that I found *Graham v. R.J. Reynolds Tobacco Co.*, 857 F.3d 1169, 1191 (11th Cir. 2017), persuasive regarding whether a state law banning cigarette sales is preempted. More importantly, I concluded that Bifolck's theory of liability, that Marlboro and Marlboro Light

cigarettes were manufactured in a way that made them unnecessarily addictive and carcinogenic, is not preempted because a finding of liability would not amount to a blanket ban of cigarettes. Any potential for jury confusion on that issue can be avoided by a jury instruction, sanctioned in *Izzarelli v. R.J. Reynolds*, 2017 WL 2889482, at *5 (2d Cir. July 7, 2017), informing the jury that they may not hold PM liable merely because its cigarettes contained nicotine and carcinogens. For that reason, the motion is denied and I will rule on any additional objections at trial.

Doc. # 281 – Motion to Preclude Evidence re Statute of Repose

I did not rule on this motion and will do so in a forthcoming order.

Doc. # 284 – Motion to Exclude Expert Testimony re Permanent Brain Changes

I denied this motion as moot because Bifolck indicated he did not intend to offer such testimony.

Doc. # 286 – Motion to Exclude Evidence of Meaning or Intent of Company Documents

PM moved to preclude any expert from testifying about the meaning of any of its documents and/or the intent of the maker of such documents. After a discussion with the parties, it appeared that the parties were in agreement that an expert may not testify to the state of mind of the author of company documents but that the expert may, using his or her specialized knowledge, explain the meaning of certain terminology in order to assist the jury. Accordingly, I granted the motion in substantial part. The only expert who may have relevant testimony regarding the intent of statements in company documents is Dr. Farone, who, as a former employee of PM, may be able to testify as a fact witness regarding the intent of the maker of such documents. Specific objections will be ruled on at trial.

Doc. # 287 – Motion to Preclude Certain Portions of Dr. Proctor's Testimony

I denied this motion as moot because Bifolck indicated he did not intend to offer the challenged testimony.

Doc. # 288 – Motion to Limit Evidence re Punitive Damages

Given the fact that the amount of punitive damages will be determined by the court (in what PM describes as "Phase II"), PM moved to preclude evidence that goes only to the amount of the punitive damage award and not to whether punitive damages are appropriate. Although I did not make any specific rulings, I generally held that the jury would only be permitted to hear evidence regarding whether punitive damages are appropriate. Such evidence must be confined to PM's conduct that allegedly harmed Jeannette Bifolck and smokers like her, and not merely to PM's general reprehensibility. That said, as a practical matter, some evidence of general wrongdoing may be admissible if it relates to the alleged conduct that injured Bifolck. The motion is granted in part, denied in part.

Doc. # 289 – Motion to Exclude Expert Testimony re "Missing Documents"

I denied this motion as moot because Bifolck indicated he did not intend to offer such testimony.

Doc. # 290 – Motion to Exclude Evidence regarding Proposition 65

PM seeks to exclude any reference to the California's state law toxicity standards that were set in accordance with Proposition 65. Although I did not conclusively rule on the motion, I expressed skepticism that such evidence would be relevant and held that, before any such evidence is admitted, I would need to hear a proffer of evidence outside of the presence of the jury. Even if such evidence is relevant, it may pose a Rule 403 issue due to its minimal probative value and the potential prejudicial effect of imposing another state law standard in a

case based on the Connecticut Product Liability Act.  The motion is denied without prejudice and Bifolck is ordered to provide advance notice to the court and PM before such evidence is offered.

### Doc. # 291 – Motion to Exclude Evidence of "Death in the West"

PM seeks to prevent Bifolck from showing clips from the documentary entitled, "Death in the West."  I held that I could not rule on the motion without viewing the clips that Bifolck seeks to admit.  Accordingly, the motion is denied without prejudice.

### Doc. # 292 – Motion to Exclude Evidence of re Nicorette Chewing Gum

PM moved to exclude evidence of its alleged efforts to prevent Nicorette gum from coming on the market.  I held that the probative value of such evidence is minimal and cumulative, and that it would be greatly outweighed by its prejudicial value.  The primary effect of its admission would be to paint PM as a bad corporate citizen.  As I emphasized multiple times at the hearing, general evidence regarding whether PM is a good/bad corporate citizen will not be admitted.  The motion is granted.

### Doc. # 293 – Motion to Exclude Evidence re Total Number of Deaths

PM moved to exclude evidence regarding the aggregate or yearly number of deaths purportedly caused by cigarettes.  I held that I was reluctant to allow testimony that paints PM as a mass murderer.  Such evidence is excluded under Rule 403 because it is incredibly prejudicial and is not probative to whether PM breached its duty to Bifolck.  Bifolck may be permitted, however, to ask whether hundreds of people or more have died as a result of Marlboro and Marlboro Light cigarettes.  Accordingly, the motion is granted in substantial part.

### Doc. # 294 – Motion to Preclude Lay Opinion Testimony re "Addiction"

PM moved to prohibit any non-expert from using the terms "addicted" or "addiction" when referring to Jeannette Bifolck's condition.  I granted that motion because, for the purpose

of this case, those terms have a specific clinical meaning and lay witnesses are not qualified to testify on that issue. Bifolck agreed to avoid using the terms "addicted" or "addiction" when speaking with lay witnesses, but said that he may seek admission of Jeannette Bifolck's own statements that she was addicted. I expressed my concern that her testimony would be inadmissible hearsay, but did not rule on the issue. The motion is granted.

<u>Doc. # 295 - Motion to Exclude Evidence re "Consumer Expectations"</u>

Bifolck moved to exclude evidence of "consumer expectations" with respect to the dangers of smoking. Specifically, Bifolck seeks to exclude a pollster and historian from testifying about people's general knowledge of the dangers of smoking. I held that such evidence would have to be considered on a case-by-case basis because it is possible that it could be relevant to whether Jeannette Bifolck knew or should have known that cigarettes caused cancer. I expressed skepticism that the pollster would be permitted to testify because it was unlikely that the pollster could tie his or her evidence to the particular circumstances of Jeannette Bifolck. The historian's expected testimony, however, appeared to be potentially relevant to the extent that it goes to the general knowledge of the community in which Bifolck lived. PM is permitted to introduce evidence of information generally available to Bifolck's community during her lifetime in order to show what she probably knew or should have known about the dangers of cigarettes. Accordingly, the motion is denied without prejudice to renewing an objection at trial regarding particular testimony.

<u>Doc. # 296 – Motion to Preclude Irrelevant Evidence</u>

I denied this motion as moot because Bifolck indicated he did not intend to offer the types of evidence described in the motion, including:

(i) comparing PM's conduct to other corporate wrongdoing;

(ii) commenting on the absence of PM' corporate representatives at trial;

(iii) referencing the geographic origin of PM's trial counsel or its litigation resources;

(iv) introducing evidence or questioning witnesses regarding PM's pretrial fact investigation;

(v) arguing that PM has failed to take responsibility or apologize to Bifolck;

(vi) introducing any evidence that PM objected to discovery requests or suggesting that it engaged in discovery misconduct; and

(vii) suggesting that PM's counsel has acted improperly by defending this case, including by arguing that defense counsel has hidden facts from the jury.

Doc. # 297 – Motion to Exclude Evidence re "Youth Marketing"

PM moved to exclude evidence that it marketed its cigarettes to youths. I held that such evidence is very prejudicial because it is just another way to paint PM as a bad corporate citizen. Nevertheless, corporate documents reflecting PM's intent to market to youths may be admissible as relevant to whether PM was negligent for making cigarettes unreasonably dangerous to youths while knowing and/or intending that youths smoke them. Accordingly, the motion is denied without prejudice and PM may renew any objection to such evidence if it is offered.

Doc. # 298 – Motion to Preclude Evidence re "Safe" or "Safer" Cigarettes

I deferred ruling on this motion and will take it up at the hearing on September 14, 2017.

Doc. # 299 – Motion to Exclude Evidence of Shook, Hardy & Bacon and other law firms

PM moved to preclude any reference to Shook, Hardy & Bacon or other specific law firms relating to past representation of PM in cigarette-related matters. I held that such evidence has minimal-to-no probative value and is incredibly prejudicial because it serves to impugn PM's

choice of counsel in this case.  Accordingly, such evidence is excluded under Rule 403 and the motion is granted.

### Doc. # 300 – Motion to Preclude Expert Testimony re Other Tobacco Cases

PM moved to exclude evidence of other tobacco cases in which PM's experts have testified.  I held that the fact an expert has previously testified in a tobacco case may be admitted, but that most other testimony about prior cases is inadmissible as irrelevant.  Of course, testimony given in prior cases may become relevant to the extent it is inconsistent with the current testimony.  Moreover, I held that a witness may be asked general questions, such as: "In all of the past cases in which you testified, have you ever testified that someone was addicted to cigarettes?"  A witness may not be asked about the outcome or facts of other cases unless there is some relevance to the instant case.  Accordingly, the motion is granted in part and denied in part.

### Doc. # 302 – Motion to Exclude Evidence of Fraud/Fraudulent Concealment

PM moved to exclude evidence that PM, through misstatements and omissions, attempted to fraudulently conceal the dangerousness of the cigarettes it manufactured.  I held that such evidence may be relevant to the issues of liability and punitive damages.  If PM sought to conceal facts regarding the dangerousness of Marlboro and Marlboro Lights, that would give rise to an inference that PM knew its products were dangerous.  Moreover, evidence of fraudulent concealment may be relevant to the issue of comparative negligence because it goes to whether PM concealed information that, had Jeannette Bifolck known, would have caused her to quit smoking.  Finally, evidence of concealment is relevant to whether punitive damages are warranted because it helps establish whether PM's conduct was wanton and willful.  The evidence is only relevant, however, insofar as it is tied to Marlboro and Marlboro Lights.  To avoid the potential for jury conclusion and unfair prejudice, Bifolck agreed to avoid using

pejorative terms such as "fraud," "concealment," and "conspiracy" when describing PM's conduct. Accordingly, the motion is granted in part and denied in part.

### Doc. # 303 – Motion to Exclude Evidence re Expert's Donation of Fees to Charity

PM moved to exclude any evidence that plaintiff's expert, Dr. Cummings, donates a portion of his fees to charity. I held that evidence of what Dr. Cummings does with his expert witness fees is plainly irrelevant. Such testimony amounts to nothing more than improper character bolstering and will not be permitted. Accordingly, the motion is granted.

### Doc. # 308 – Motion to Exclude Dr. Strauss's Supplemental Opinions re Other Experts

PM moved to exclude Dr. Strauss's supplemental expert opinion in which he states that he "agrees" with the conclusions of plaintiff's other experts. Although I appreciated PM's concern that Dr. Strauss should not give testimony that merely parrots that of Bifolck's other experts, it appears that Dr. Strauss does have relevant testimony regarding whether, after considering the results of tests performed by other experts, he felt more or less confident about his earlier conclusions concerning Jeannette Bifolck's condition. Accordingly, the motion is denied without prejudice and PM may raise specific objections to Dr. Strauss's testimony as it is offered.

### Doc. # 312 – Motion to Exclude Evidence re Jeannette Bifolck's Wishes

I deferred ruling on this motion and will take it up at the hearing on September 14, 2017.

### Jury Questionnaire

Finally, I issued rulings regarding the questionnaire that will be provided to prospective jurors in advance of jury selection. The parties have agreed to provide me with a revised copy that incorporates the changes made on the record.

It is so ordered.

Dated at Bridgeport, Connecticut, this 15th day of August 2017.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge