# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

VINCENT J. BIFOLCK,
    Plaintiff,

v.

PHILIP MORRIS, INC.,
    Defendant.

No. 3:06-cv-1768 (SRU)

## CONFERENCE MEMORANDUM AND ORDER

On September 14, 2017, I held a hearing on the pending motions in limine with David Golub and Jonathan Levine, counsel for the plaintiff, Vincent Bifolck; and Scott Kaiser, Fran Morrison, Geoffrey Michael, and John Tanski, counsel for the defendant, Philip Morris, Inc. ("PM"). This order represents a summary of the rulings I made on the record. Where pertinent, I have included clarifications of my oral rulings such that this order should be the controlling document regarding my resolution of those motions.

<u>Doc. # 351 – Motion for 48-Hour Advance Notice of Witnesses and Exhibits before Presentation at Trial</u>

PM moved for 48-hour advance notice of witnesses and exhibits before presentation at trial. I indicated that this was a reasonable request, and something I generally try to incorporate in trials, informally or formally. I specified that each party should make best efforts to provide the other party with notice of testimony and exhibits it intends to offer at trial, and such notice should be provided at least 48 hours in advance of the evidence being offered. Additionally, I indicated that each party must make best efforts to give the other 48-hour notice of when it plans to rest its case, which then shifts the 48-hour notice obligation to the other party. The motion is granted.

Doc. # 282 – Motion to Exclude Evidence of and Argument Related to Ammonia Compounds or Other Additives or Ingredients Used in Cigarettes

PM moved to preclude evidence or argument related to the effect of ammonia compounds or other additives on the addictiveness and/or harmfulness of cigarettes on the grounds that such evidence lacks sufficient reliability under the *Daubert* standard and that it is irrelevant and unduly prejudicial to PM. The ammonia issue has two related but different components: (1) whether ammonia renders a higher blood level of nicotine; and (2) whether ammonia renders the cigarette more addictive. On the first point, there seems to be sufficient scientific evidence to allow expert testimony that adding ammonia to a cigarette increases the level of "free base" nicotine as opposed to "bound" nicotine, which provides the user with an increased "kick" or physiological reaction. Expert testimony to that effect is admissible. On the second point, however, there does not seem to be sufficient scientific evidence to support the theory that the addition of ammonia to a cigarette, and the resultant "kick," increases the *addictiveness* of the cigarette. It may make the cigarette more enjoyable to the user, but there is insufficient evidence to correlate that to an increased addictiveness. Accordingly, expert testimony to that effect is inadmissible.

Regarding the other additives issue, I indicated that expert testimony is admissible to allow the jury to understand the plaintiff's theory that these additives made the cigarette more dangerous or harmful. PM expressed its concern that Bifolck will pick and choose which additives to discuss, based on the reaction it might receive from the jury, i.e., formaldehyde or castoreum (found naturally in a secretion from glands near the anal glands of beavers). I indicated that I thought it was unnecessary for Bifolck to offer an exhaustive list of additives to prove its contention that cigarettes are more harmful and addictive based on their ingredients. Bifolck represented that he did not intend to offer evidence on every additive, and agreed to

provide PM with advanced notice before eliciting testimony or offering exhibits on specific additives. For those reasons, the motion is granted in part and denied in part. Specific objections will be ruled on at trial.

Doc. # 283 – Motion to Preclude Evidence or Argument that Low Nicotine Cigarettes are not Addictive

PM moved to preclude evidence or argument that low nicotine cigarettes are not addictive. The testimony PM seeks to preclude, that low-nicotine cigarettes are not addictive, seems to be the subject of legitimate scientific debate and, therefore, not properly subject to preclusion by way of a *Daubert* motion, but, rather, will be the subject of cross-examination. PM objected, then, to testimony from Bifolck's experts about a requisite threshold of nicotine, below which a cigarette is non-addictive. PM argued that it is irrelevant, under Fed. R. Evid. 403, because Bifolck's expert witnesses had inconsistent opinions about that threshold amount. Bifolck indicated that all of his experts will testify that the requisite amount of nicotine, below which a cigarette is non-addictive, is 0.1 milligrams per cigarette. Regarding Dr. Cummings' expert opinion on the nicotine level, I indicated that Bifolck had not updated its expert disclosure to include his opinion that a nicotine level at 0.1 mg/cigarette or less renders a cigarette non-addictive. That is harmless error, however, because PM has frequently deposed Dr. Cummings regarding his opinions on the addictiveness of cigarettes. I suggested that PM let Bifolck know if it needed to re-depose Dr. Cummings or Dr. Farone on their opinions regarding a non-addictive nicotine threshold. For those reasons, the motion is denied. Specific objections will be ruled on at trial.

Doc. # 285 – Motion to Preclude Expert Testimony by Dr. Grunberg

PM moved to preclude Dr. Grunberg from testifying (1) that there is a minimum effective dose range of nicotine necessary to initiate and sustain addiction, (2) about medical and public

3

health history regarding cigarettes and nicotine addictiveness data, and (3) that PM has manipulated cigarette design to foster addiction among smokers. I ruled that any argument about Dr. Grunberg's qualifications to testify was not meritorious on the basis of his education, training, and experience. He has completed doctoral training in pharmacology, he was the Scientific Editor of the U.S. Surgeon General's Report on nicotine and addiction, and has served on numerous working committees involved with this topic. In terms of his qualifications to be an expert in this area, he has certainly met the *Daubert* standard. PM further moved to preclude Dr. Grunberg's testimony about medical and public health history on the basis that it would be cumulative, because Bifolck disclosed at least one other witness to testify on that subject. I suggested that Bifolck decide which of his experts would testify on this topic, and communicate that to PM within the next week or two. For those reasons, the motion is denied. Specific objections, including foundation objections, will be ruled on at trial.

Doc. # 298 – Motion to Preclude Cross-Examination of Plaintiff's Medical Experts Regarding the Market Availability or Design Feasibility of "Safe" or "Safer" Cigarettes

Bifolck moved to preclude cross-examination of his medical experts regarding the availability or feasibility of safe and/or safer cigarettes. This issue has two sub-parts: (1) proposed testimony regarding market availability; and (2) proposed testimony regarding design feasibility. Bifolck's medical experts are not sufficiently qualified to testify about the design feasibility of "safe" or "safer" cigarettes, because they are not cigarette design experts. It is proper cross-examination, however, to ask the medical experts about their perceptions of the market availability of "safe" or "safer" cigarettes. PM's attorneys may ask questions about whether the witnesses are *aware* of any cigarettes on the market that they deem "safe" or "safer" but not about whether it is theoretically possible to design "safe" or "safer" cigarettes. For those

4

reasons, the motion is granted in part and denied in part. Specific objections will be ruled on at trial.

Doc. # 301 – Motion to Preclude Testimony, Argument, and Evidence Regarding *United States v. Philip Morris, Inc.*

PM moved to preclude testimony, argument, and evidence regarding *United States v. Philip Morris USA, Inc.*, 449 F. Supp. 2d 1 (D.D.C. 2006), on the grounds that it is inadmissible hearsay, not subject to any exceptions. I held that the documents that Judge Kessler relied on in that case are publicly available to Bifolck and are not subject to the same objections as the court's findings themselves. The findings are, therefore, not necessary to Bifolck and are not "more probative on the point for which [they are] offered than any other evidence that the proponent can obtain through reasonable efforts," as required by Rule 807, the Residual Exception to the hearsay rule. Fed. R. Evid. 807. Additionally, the findings do not have any independent relevance. Therefore, the findings of Judge Kessler are inadmissible hearsay, not subject to any of the hearsay exceptions, including the residual exception. For that reason, the motion is granted. Specific objections will be ruled on at trial.

Doc. # 304 – Motion to Preclude Opinion Concerning Causation and Cigarette Design Features

PM moved to preclude opinion testimony concerning causation and cigarette design defects in the cigarettes Mrs. Bifolck smoked unless (1) the allegedly defective design feature was a but-for cause of her injury and death; or (2) Bifolck would have avoided her injury and death if she smoked cigarettes that incorporated the design changes identified by Bifolck's experts. It appears that PM has misconstrued Bifolck's position. Bifolck does not allege that any particular design feature of the cigarette is the but-for cause of Mrs. Bifolck's injuries, but, rather, the increased amount of tar and nicotine made the cigarettes unnecessarily hazardous and

5

addictive. The design features are simply the modalities of delivering the design defect to the consumer. PM's motion was more of a summary judgment motion than a *Daubert* motion. Bifolck has alleged sufficient connection between the alleged defects and the harm to Mrs. Bifolck for Bifolck to present expert testimony at trial. PM can move for judgment as a matter of law after Bifolck rests his case, if it thinks that Bifolck did not sufficiently prove causation. Accordingly, the motion is denied. Specific objections will be ruled on at trial.

Doc. # 305 – Motion to Preclude Plaintiff's Experts' Opinions on Medical Causation

PM moved to preclude expert testimony by Dr. Strauss and Dr. Posteraro regarding the medical causation of Mrs. Bifolck's lung cancer. PM moved to preclude Dr. Posteraro's causation testimony because he was not disclosed as an expert witness and did not form a causation opinion in the course of his treatment of Mrs. Bifolck. Dr. Posteraro, Mrs. Bifolck's treating physician, did opine in a deposition that Mrs. Bifolck's lung cancer was caused by smoking. From my review of her medical records provided by PM, however, there was nothing to suggest that Dr. Posteraro formed that opinion *during* his treatment of Mrs. Bifolck, as required in order for him to testify to that effect as a fact witness. *See Barack v. American Honda Motor Co., Inc.,* 293 F.R.D. 106, 109 (D. Conn. 2013). It appears that he formed his opinion correlating Mrs. Bifolck's smoking to her lung cancer after his treatment of her ended. For this reason, Dr. Posteraro can testify about his diagnosis that Mrs. Bifolck had lung cancer, but not that he believes it was caused by her smoking.

PM moved to preclude Dr. Strauss' causation testimony because he did not follow the correct epidemiological procedure to accurately opine that Mrs. Bifolck's lung cancer was caused by her smoking, nor could he identify any studies that correlated 30 pack years of smoking to lung cancer in women under the age of 45. It appears that PM's issue was not with

6

epidemiology as a scientific method, but with Dr. Strauss' application of epidemiology to the facts of this case, which PM can challenge on cross-examination. The combination of articles Dr. Strauss cited, the Surgeon General's Report, and the Connecticut Tumor Registry, combine to provide sufficient scientific support for his opinion that there is a correlation between smoking and the incidence of lung cancer in women under the age of 45. PM seems to be, in essence, taking issue with Dr. Strauss' *methodology* in coming to his causation opinion, which is better dealt with on cross-examination. For those reasons, the motion is granted in part and denied in part. Specific objections will be ruled on at trial.

<u>Doc. # 312 – Motion to Prohibit Questioning about Whether Jeanette Bifolck Would Have Pursued this Action</u>

Bifolck moved to prohibit PM from eliciting testimony from witnesses, Mrs. Bifolck's friends and family, about whether Mrs. Bifolck would have pursued this action herself or wanted her family to do so on her behalf. This evidence is inadmissible under Fed. R. Evid. 602, because it is lay opinion not based on observable information; because Mrs. Bifolck never told anyone her views on this issue, the witnesses do not have first-hand knowledge of what Mrs. Bifolck would have wanted. Additionally, what Mrs. Bifolck would have wanted is irrelevant. For those reasons, the motion is granted.

<u>Other Matters</u>

In addition to the motions listed above, I notified the parties that I will issue a ruling shortly on PM's Motion on the Statute of Repose (doc. # 281). Additionally, I set the following deadlines:

- September 29, 2017: Bifolck provides PM a list of the witnesses he intends to use at trial, and whether he will elicit live testimony or introduce deposition testimony for each.
- September 29, 2017: Parties provide me a list of the potential jurors from the juror questionnaire administration spreadsheet who the parties believe should be struck for

7

cause.

PM also expressed its desire to receive the names of the potential jurors who participated in the juror questionnaire administration in order to research them before the October 12 jury selection.  Bifolck originally agreed with PM but then opposed this request.  I expressed my distaste for this practice and asked PM to file a motion requesting the potential jurors' names and asked Bifolck to file a response.  I have since received PM's motion.

In addition, Bifolck stated that PM has taken the position that it will not produce its cigarette design expert, Richard Jupe, for use in Bifolck's case.  It appears that Jupe is outside of the 100 mile radius provided in Fed. R. Civ. Proc. 45, and, therefore, is not subject to the power of a subpoena.  Bifolck stated that he wanted to take a videotaped trial deposition to present at trial in lieu of live testimony, to which PM responded that Bifolck had already deposed Jupe in a videotaped discovery deposition and did not need to depose him again.  I suggested multiple options:  (1) Jupe comes to court once during Bifolck's case and both parties conduct their direct and cross-examinations in a single session; (2) Jupe videoconferences in for remote live testimony during Bifolck's case; or (3) Bifolck deposes him in a short trial deposition and shows the video at trial.  I told the parties to meet and confer about a resolution.

So ordered.

Dated at Bridgeport, Connecticut, this 25th day of September 2017.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge