UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

VINCENT J. BIFOLCK,
    Plaintiff,

v.

PHILIP MORRIS, INC.,
    Defendant.

No. 3:06-cv-1768 (SRU)

**MEMORANDUM OF DECISION**

On August 10, 2017, I held a hearing on the pending motions in limine. On August 15, 2017, I issued a memorandum of decision in which I outlined the rulings that I made on the record and wrote separately to clarify those rulings. I deferred ruling on Philip Morris, Inc.'s motion to exclude evidence based on the statute of repose (doc. # 281). For the reasons that follow, the motion is denied.

**I.    Background**

Philip Morris, Inc. ("PM") seeks an order absolving it from liability for any of its conduct that occurred prior to May 20, 1992. PM also seeks an order excluding such evidence as irrelevant. Bifolck responds that this case falls within a well-defined exception to the statute of repose and that, even if PM cannot be liable for conduct occurring prior to 1992, evidence of PM's state of mind prior to 1992 is relevant to the claims of negligence based on conduct occurring after 1992.

**II.    Discussion**

Connecticut's statute of repose for product liability claims provides:

> No product liability claim . . . shall be brought but within three years from the date when the injury, death or property damage is first sustained or discovered

or in the exercise of reasonable care should have been discovered, except that . . . no such action may be brought against any party . . . later than ten years from the date that the party last parted with possession or control of the product.

Conn. Gen. Stat. § 52-577a. The statute provides for several exceptions, most relevant to this motion is when "the claimant can prove that the harm occurred during the *useful safe life* of the product." *Id.* (emphasis added). The "useful safe life" of a product refers generally to its "normal life expectancy," and "'begins at the time of delivery of the product and extends for the time during which the product would normally be likely to perform or be stored in a safe manner.' Under the [Model Uniform Products Liability Act], the useful safe life of a product expires when the product is no longer 'likely' to be safe for 'normal' use." *Hubbard-Hall v. Monsanto Co.*, 98 F. Supp. 3d 480, 484 (D. Conn. 2015) (citing MODEL UNIF. PRODUCTS LIAB. ACT § 110(A) (1979)). The duration of a product's useful safe life is a question of fact to be resolved by the jury. *Id.* at 483.

In the instant case, there is no colorable dispute with respect to whether Mrs. Bifolck smoked Marlboro cigarettes during their useful safe life—Bifolck has indicated that Mr. Bifolck would be willing to testify to the fact that Mrs. Bifolck smoked her cigarettes shortly after purchasing them. The more difficult question is whether Bifolck is able to establish that Mrs. Bifolck experienced a harm during the safe life of the cigarettes that she smoked. That question turns on the manner in which one defines harm. If the harm is the existence of lung cancer, Bifolck may not be able to take advantage of the useful safe life exception because there is no evidence that her lung cancer manifested itself during the useful safe life of the cigarettes that she smoked prior to 1992. If, however, the harm is the inhalation of smoke from Marlboro and Marlboro Light cigarettes, which contained unreasonably high amounts of tar and nicotine, then Bifolck may be able to show that the harm occurred during the useful safe life of those cigarettes.

Under Connecticut law, an "injury is first sustained," for statute of limitations purposes, "when a party suffers some form of actionable harm." *Burns v. Hartford Hosp.*, 192 Conn. 451, 460 (1984). A plaintiff suffers an "actionable harm" when there is a manifestation of "some form" of injury. *Id.* "The harm need not have reached its fullest manifestation before the statute begins to run." *Id.* By referring to "actionable harm" and not merely "harm," Connecticut courts are at least implicitly distinguishing between two types of harm. "Actionable harm" is synonymous with "legal injury." *Lagassey v. State*, 268 Conn. 723, 748 (2004). Regular "harm," on the other hand, has no specific definition. Rather, it may be defined using its ordinary definition. Harm is defined as "injury, loss, damage; material or tangible detriment." Black's Law Dictionary (10th ed. 2014). Using that definition of the term, Bifolck was certainly harmed each time she smoke a cigarette because the cumulative effect of those cigarettes had a detrimental effect on her health. *See Caronia v. Philip Morris USA, Inc.*, 715 F.3d 417, 430 (2d Cir.), *certified question accepted*, 21 N.Y.3d 937 (2013), and *certified question answered*, 22 N.Y. 3d 439 (2013) (quoting *Snyder v. Town Insulation, Inc.*, 81 N.Y.2d 429 (1993)) (harm from inhalation of product may occur "at the moment the [product] was inhaled even though plaintiff may not have been aware of it then"). Each cigarette contributed to the ultimate harm—a harm that manifested itself long after the inhalation of the first cigarettes.

That construction of "harm" comports with the manner in which the useful safe life exception has been assessed. In *Hubbard-Hall*, the Court considered a suit against a manufacturer of paint containing PCBs for compensatory damages that resulted from the contamination of plaintiff's property. *See Hubbard-Hall*, 98 F. Supp. 3d at 480. There, even though the actionable harm did not manifest itself until many years later when the Environmental Protection Agency and the Connecticut Department of Environmental Protection ordered the

3

plaintiff to remediate the contaminated property, the Court held that the original contamination occurred during the useful safe life of the paint, thus exempting it from the statute of repose. *See id.* at 486. Such a holding bolsters my conclusion that "harm" for the purposes of the useful safe life exception is distinct from "actionable harm," as described in the statute of limitations context.

Moreover, the purpose of the products liability statute of repose is not undermined by such a construction of harm for purposes of the useful safe life exception. The purpose of section 52-577a is to prevent manufacturers from being held liable for defects in their products occurring long after the product left the manufacturer's possession or control. *See Zapata v. Burns*, 207 Conn. 496, 509 (1988) (purpose is to protect defendant from stale claims). The statute creates a specific exception, however, for harms that occurred within the useful safe life of the product. As described by "one of the product liability act's main proponents," *see Gerrity v. R.J. Reynolds Tobacco Co.*, 263 Conn. 120, 128 (2003), one of the main purposes of that exception is to protect "those harmed by the inhalation or ingestion of chemicals, drugs or substances where the damage done may not be known for many years." *See* Remarks of Sen. Salvatore DePiano, Transcript of Senate Floor Debate, May 29, 1979, 22 Senate Proceedings, Part 14, 1979 Session, pp. 4625-4650. Sen. DePiano cited to various types of injuries that would be actionable under the useful safe life exception, which included "asbestos injuries, radiation injuries," and the "ingestion of DES." *Id.* Those harms are similar to the inhalation of cigarette smoke in that the harm may be found to occur at the moment of ingestion/inhalation, but does not manifest itself until much later. Sen. DePiano's testimony makes it unlikely, in writing such an exception, the Connecticut state legislature intended that the term "harm" only include harm that manifests itself during the useful safe life of the product. If it had, it would have used a term

4

such as "injury" or "actionable harm."  By using the term "harm," the Connecticut legislature recognized that a harm that occurred during the useful safe life of a product was actionable even if the injury occurred years later.  *See id.*

In the instant case, Bifolck will likely be able to show that Mrs. Bifolck smoked Marlboro and Marlboro Light cigarettes during the useful safe life of those products.  Bifolck's experts will likely testify that the cigarettes she smoked eventually caused her lung cancer.  Because each cigarette could be found to be a contributing factor to the ultimate injury, Bifolck will likely be able to establish that she suffered a harm each time she inhaled a Marlboro and Marlboro Light cigarette, thus falling squarely within the useful safe life exception to the statute of repose.

**III.   Conclusion**

Bifolck's allegations fall within the "useful safe life" exception to the statute of repose, and, therefore, PM may be held liable for conduct occurring prior to 1992.  Accordingly, PM's motion (doc. # 281) is denied.

So ordered.

Dated at Bridgeport, Connecticut, this 25th day of September 2017.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge